## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO.  19-11365-TMD-11 |
| BLUE CHIP HOTELS ASSET GROUP - | § | |
| ROUND ROCK, LLC, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Dated: December 6, 2019

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Christopher M. Staine
State Bar No. 24104576
2525 McKinnon St., Suite 425
Dallas, TX 7501
Telephone: 214.420.2163
Facsimile:  214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: christopher.staine@crowedunlevy.com

**ATTORNEYS FOR DEBTOR**

## TABLE OF CONTENTS

I.    SUMMARY OF THE PLAN ................................................................. 1
    1.1   Overview of the Plan ........................................................ 1
    1.2   Payments to Creditors ..................................................... 1
II.   DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME 1
    2.1   Scope of Definitions ........................................................ 1
    2.2   Definitions ....................................................................... 1
    2.3   Rules of Interpretation .................................................... 7
    2.4   Computation of Time ...................................................... 7
    2.5   Exhibits and Plan Supplement ....................................... 7
III.  DESIGNATION OF CLASSES OF CLAIMS ................................ 8
    3.1   Designation of Classes of Claims .................................. 8
    3.2   Unclassified Claims ........................................................ 8
    3.3   Classified Claims and Interests ...................................... 8
IV.  PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS. ...................................................... 8
    4.1   Administrative Claim Applications and Deadline ......... 8
    4.2   Treatment of Administrative Claims .............................. 9
    4.3   Treatment of Professional Claims .................................. 9
    4.4   Priority Tax Claims ......................................................... 9
V.   TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ............................ 10
    5.1   Secured Claims of Taxing Authorities .......................... 10
    5.2   Secured Claims of Hotel Reposition Partners, LLC. .............. 11
    5.3   Secured Claim of Tax Lender, MTAG Services, LLC ........... 12
    5.4   Secured Claim of Ascentium Capital .......................... 13
    5.5   General Unsecured Claims ............................................ 13
    5.6   General Unsecured Claims of Insiders .......................... 13
    5.7   Equity Interest Holders .................................................. 14
    5.8   Payments to the United States Trustee........................... 14
VI.  MEANS OF IMPLEMENTING THE PLAN........................... 14
    6.1   Sale of the New Equity Interests................................... 14
    6.2   Auction and Bid Procedures ......................................... 15
    6.3   Post Effective Date Management................................... 15
    6.4   Corporate Action............................................................ 15
    6.5   Documents ...................................................................... 15
    6.6   Re-Vesting of Assets...................................................... 15
    6.7   Substantial Consummation. ........................................... 16
    6.8   Assumption of Franchise Agreement with Holiday Hospitality Franchising, Inc. ........................................................................ 16
    6.9   Incorporation of Bankruptcy Rule 9019 ....................... 16
    6.10  Incorporation of Valuation Motion............................... 16
    6.11  Automatic Stay............................................................... 16
    6.12  Rights Under 1129(b) ………………………………… 17
VII. AUCTION AND BID PROCEDURES ................................... 16
    7.1   Property to be Sold........................................................ 16

7.2    Participation Requirements ................................................................ 16
7.3    Due Diligence ................................................................................... 17
7.4    Bid Requirements.............................................................................. 17
7.5    Bid Deadline ..................................................................................... 18
7.6    Evaluation of Qualifying Bids ......................................................... 18
7.7    Auction ............................................................................................. 18
7.8    Auction Procedures ......................................................................... 18

**VIII. PROVISIONS FOR THE ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................................................ 19**
8.1    General Assumption of Executory Contracts ........................................... 19
8.2    Cure of Defaults ............................................................................... 19
8.3    Claims for Damages......................................................................... 20
8.4    Reservation of Rights....................................................................... 20

**IX. RESOLUTION OF UNDETERMINED CLAIMS ............................................ 20**
9.1    Standing ............................................................................................ 20
9.2    Effect of Bar Date ............................................................................ 20
9.3    Amendments to Claims; Claims Filed After the Confirmation Date........ 20
9.4    Objection Deadline .......................................................................... 21
9.5    Creditor Response to Objection ....................................................... 21
9.6    No Payment Pending Allowance ..................................................... 21
9.7    Allowance of Claims........................................................................ 21
9.8    Estimation of Claims........................................................................ 21

**X. DISTRIBUTION PROCEDURES ...................................................................... 22**
10.1    Date of Distributions ........................................................................ 22
10.2    Withholding and Reporting Requirements ...................................... 22
10.3    Unclaimed Distributions .................................................................. 22

**XI. MODIFICATION OF THE PLAN .................................................................... 22**
11.1    Amendments Prior to Confirmation Date ................................................ 22
11.2    Amendments After Confirmation Date............................................ 23
11.3    Effect on Claims .............................................................................. 23

**XII. RETENTION OF JURISDICTION ................................................................. 23**
12.1    Purposes ........................................................................................... 23
12.2    Exclusive Jurisdiction ...................................................................... 24
12.3    Abstention ........................................................................................ 24

**XIII. CAUSES OF ACTION .................................................................................... 25**
13.1    Retention of Causes of Action ......................................................... 25

**XIV. GENERAL PROVISIONS ............................................................................... 25**
14.1    Certain Rights Unaffected................................................................ 25
14.2    Headings ........................................................................................... 25
14.3    Severability ....................................................................................... 25
14.4    Governing Law ................................................................................. 25
14.5    Successors and Assigns..................................................................... 25
14.6    Discharge of Claims......................................................................... 25
14.7    Discharge of Debtor ......................................................................... 26
14.8    Exculpations..................................................................................... 26
14.9    Injunctive Relief .............................................................................. 26

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 19-11365-TMD-11** |
| **BLUE CHIP HOTELS ASSET GROUP -** | § | |
| **ROUND ROCK, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S PLAN OF REORGANIZATION

Blue Chip Hotels Asset Group - Round Rock, LLC (the "Debtor") proposes the following First Amended Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

1.1 <u>Overview of the Plan</u>. The Plan provides for a reorganization of all liabilities owed by the Debtor, as described herein. The Reorganized Debtor, as provided herein, shall be the surviving entity to the Debtor.

1.2 <u>Payments to Creditors</u>. The Plan provides for Creditors to be paid as provided in Article V herein from the proceeds of a sale of the Property and if the conditions of such sale are not met, then revenues associated with the operations of the Reorganized Debtor's business. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

2.1 <u>Scope of Definitions</u>. As used in this Plan, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.2 <u>Definitions</u>.

    2.2.1 <u>Administrative Claim</u>: Any Claim for payment of any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with Sections 503(b) and 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date

to and including the Confirmation Date and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under Chapter 11 of the Bankruptcy Code.

2.2.2 <u>Administrative Claim Bar Date</u>:  The date that is thirty (30) days after the Confirmation Date.

2.2.3 <u>Allowed Claim or Allowed Interest</u>:  Any Claim (a) based on an application of a Professional Person to the extent such application is approved by Final Order; (b) allowed under this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtor in its schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.2.4 <u>Allowed Priority Claim</u>:  All or that portion of any Priority Claim which is or has become an Allowed Claim.

2.2.5 <u>Allowed Secured Claim</u>:  All or that portion of any Secured Claim which is or has become an Allowed Claim.

2.2.6 <u>Avoidance Action</u>:   Any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are released or waived in this Plan.

2.2.7 <u>Bankruptcy Code</u>:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 11 case, § 101 *et seq.* Title 11, United States Code.

2.2.8 <u>Bankruptcy Rules</u>:   The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.2.9 <u>Bar Date</u>:     The dates set forth in the Debtor's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadline and the date by which

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 2**

proofs of claim must be filed, or be barred pursuant to Federal Rule of Bankruptcy Procedure 3003. For all creditors other than governmental units, the date shall be December 10, 2019. For a governmental unit, the date shall be 180 days from the Petition Date.

2.2.10  <u>Business Day</u>:  Any day on which banks are open to carry on their ordinary commercial banking business in Round Rock, Texas.

2.2.11  <u>Cash</u>:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.2.12  <u>Causes of Action</u>:  All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtor, for affirmative recovery of Cash or other property of the Estate, existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date, whether listed in the Debtor's Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in this Chapter 11 Case, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action and expressly including any Avoidance Action.

2.2.13  <u>Chapter 11 Case</u>:  The Chapter 11 bankruptcy case of Blue Chip Hotels Asset Group - Round Rock, LLC, Case Number 19-11365-TMD-11, United States Bankruptcy Court for the Western District of Texas, Austin Division, filed August 5, 2019.

2.2.14  <u>Claim</u>:  Any right against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.2.15  <u>Claims Objection Deadline</u>:  The date by which parties authorized by the Plan may file objections to Claims, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims, which deadlines are further specified in Plan.

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 3**

2.2.16  <u>Collateral</u>:  Property in which the Debtor has an interest that secures, in whole or in part, payment of an Allowed Secured Claim.

2.2.17  <u>Confirmation</u>:  Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.2.18  <u>Confirmation Date</u>:  The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.2.19  <u>Confirmation Hearing</u>:  The date set by the Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.2.20  <u>Confirmation Order</u>:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.2.21  <u>Contingent Claim</u>:  Any Claim listed in the Debtor's schedules that is listed as "contingent."

2.2.22  <u>Court</u>:  The United States Bankruptcy Court for the Western District of Texas or such other Court as may have jurisdiction of the Chapter 11 Case.

2.2.23  <u>Creditor</u>:  Any entity that is the Holder of a Claim or an interest, including, but not limited to: (a) a Claim that arose on or before the Petition Date, (b) an interest that arose on or before the Petition Date, (c) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.2.24  <u>Debtor</u>:  Blue Chip Hotels Asset Group - Round Rock, LLC.

2.2.25  <u>Cure Claim</u>:  A "Cure Claim" refers to the payment of other performance required to cure any existing default under an executory contract in accordance with Section 365 of the Bankruptcy Code, and unless otherwise specifically provided for in the Plan, is presented via an "Assumption Cure Proof of Claim" as described in Section 7.2 of the Plan.

2.2.26  <u>Disclosure Statement</u>:  The written Disclosure Statement filed and served with respect to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

2.2.27  <u>Disputed Claim</u>:  Any Claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.2.28  <u>Effective Date</u>:  The date that is no later than thirty (30) days after the Confirmation Date, or earlier date, as determined in the sole discretion of the Debtor; *provided, however*, that the occurrence of the Effective Date shall not alter the meaning of "substantial consummation" as that term is defined in Section 1101(2) of the Bankruptcy Code.

2.2.29  <u>Estate</u>:  The estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

2.2.30  <u>Equity Interest</u>:  An interest in the ownership of the Debtor.

2.2.31  <u>Fee Application</u>:  An application of a Professional Person under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

2.2.32  <u>File, Filed, or Filing</u>:  Means file, filed or filing with the clerk of the Bankruptcy Court, or it authorized designee in the Chapter 11 Case.

2.2.33  <u>Final Order</u>:  An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.2.34  <u>Franchisor</u>:  The term "Franchisor" or "IHG" shall mean Holiday Hospitality Franchising, LLC.

2.2.35  <u>Franchise Agreement</u>:  That certain License Agreement between IHG, as licensor, and Debtor, as licensee.

2.2.36  <u>Holder or Claimholder</u>:  Any entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h) or Section 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.2.37  <u>Impaired</u>:  When used with respect to any Claim, interest or class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code.

2.2.38  <u>Interest Holder</u>:  Any person, or entity, holding an Equity Interest in the Debtor as of the Petition Date.


2.2.39  <u>Order</u>:  An order or judgment of the Bankruptcy Court as entered on the docket for this bankruptcy case.

2.2.40  <u>Petition Date</u>:  August 5, 2019.

2.2.41  <u>Plan</u>:  The Plan proposed by the Debtor, either in its present form or as it may be amended or modified.

2.2.42  <u>Priority Claims</u>:  Allowed Claim entitled to a priority under, *inter alia*, Section 507(a) of the Bankruptcy Code.

2.2.43  <u>Priority Tax Claim</u>:  Any Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.2.44  <u>Pro Rata</u>:  Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included, to the amount of all Allowed Claims of that Class.

2.2.45  <u>Professional Claim</u>:  A Claim that is filed by a Professional Person pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.46  <u>Professional Claim Bar Date</u>: Means the date that is sixty (60) days after the Effective Date.

2.2.47  <u>Professional Person</u>:  Any entity retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code

2.2.48  <u>Property</u>:   The interests in fee simple owned and managed by the Debtor, more generally known as the hotel located at 2340 IH 35 North, Round Rock, Texas 78681.

2.2.49  <u>Reorganized Debtor</u>:  The legal entity that shall survive the Debtor as of the Confirmation Date.

2.2.50  <u>Secured Claim</u>:  A Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy

Code or (b) subject to set off under Sections 553 of the Bankruptcy Code, in each case to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in Sections 1111(b)(2) of the Bankruptcy Code.

2.2.51 <u>Secured Creditor</u>: Any Creditor that is the Holder of a Secured Claim.

2.2.52 <u>Taxing Authorities</u>: The County of Williamson, Texas.

2.2.53 <u>Undetermined Claim</u>: A Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim in respect of an application of a Professional Person; or (d) a claim that is an Unliquidated or Contingent Claim.

2.2.54 <u>Unliquidated Claim</u>: Any Claim that is listed in the Debtor's schedules as "unliquidated."

2.2.55 <u>Unsecured Claim</u>: Any claim against the Debtor whatsoever, other than 1) a Secured Claim, or 2) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

2.3 <u>Rules of Interpretation</u>: For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 502 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

2.4 <u>Computation of Time</u>. In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.5 <u>Exhibits and Plan Supplement</u>. All exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtor. Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 7**

**ARTICLE III**
**DESIGNATION OF CLASSES OF CLAIMS**

3.1     <u>Designation of Classes of Claims</u>:  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2     <u>Unclassified Claims</u>:

Allowed Administrative Claims (Unimpaired)

Allowed Priority Tax Claims (Unimpaired)

3.3     <u>Classified Claims and Interests</u>:

Class 1:         Secured Claims of Taxing Authorities (impaired)

Class 2:         Secured Claims of Hotel Reposition Partners (impaired)

Class 3:         Secured Claims of Tax Lender (MTAG Services, LLC) (impaired)

Class 4:         Secured Claims of Ascentium Capital (impaired)

Class 5:         General Unsecured Claims of Non-Insiders (impaired)

Class 6:         General Unsecured Claims of Insiders (impaired)

Class 7:         Equity Interest Holders (unimpaired)

**ARTICLE IV**
**PAYMENT OF ADMINISTRATIVE CLAIMS**
**AND EXPENSES AND CERTAIN PRIORITY CLAIMS**

4.1     <u>Administrative Claim Applications and Deadline</u>.  Holders  of  Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Bate: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United

States Trustee and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code. Notwithstanding anything to the contrary, IHG shall not need to file an Administrative Claim, as the requirement for the Debtor to make all payments due under the Franchise Agreement in the ordinary course is incorporated into the Plan.

4.2     Treatment of Administrative Claims:   Except to the extent that the Debtor and the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan.   Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

4.3     Treatment of Professional Claims:   Professional Claims become Allowed the same as Administrative Claims in this Article (Section 4.1), and are treated the same as Administrative Claims in this Article (Section 4.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 4.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 4.1, but shall file such application by the Professional Claims Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Professional Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis.

4.4     Priority Tax Claims:   Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 5% per annum accrued thereon on a quarterly basis on October 1, January 1, April 1, and July 1 of each year over a period not exceeding three (3) years after the date of the order for relief, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date.   If the Reorganized Debtor fails to make a payment owed on an Allowed Priority Tax Claim pursuant to the terms of the Plan, it shall be deemed an Event of Default.   In the event that an event of default occurs with regard to an Allowed Priority Tax Claim, the specific Holder

of the Priority Tax Claim shall send a written notification, via first class mail, postage pre-paid, to the Reorganized Debtor of the event of default. The Reorganized Debtor shall have ten (10) days from the date the written notification is sent to cure the event of default in full or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Reorganized Debtor's mailing address for purposes of sending this written notification is Blue Chip Hotel Assets Group - Round Rock, LLC, 1990 IH 35 N, Round Rock, TX 78681. Notices sent to the Reorganized Debtor by the Holder of an Allowed Priority Tax Claim shall be sent by first class mail, postage pre-paid.

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     Secured Claims of Taxing Authorities:  (Class 1)

    5.1.1     Class 1:     Class 1 shall consist of the Allowed Secured Claims of the Taxing Authorities related to ad valorem taxes owed by the Debtor for the 2019 tax year. The Class 1 Claims shall be timely paid in the ordinary course. To the extent the Class 1 Claims are not timely paid, any payments made on account of the Class 1 Claims shall include interest from February 1, 2020 through the date of payment in full at the applicable state statutory rate of 1% per month, pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.

    5.1.2     Retention of Liens:     The Taxing Authorities shall hereby retain the liens they currently hold and such liens shall remain in full force and effect until all taxes, penalties or interest secured thereby have been paid in full.

    5.1.3     Post-petition Taxes:     The Debtor shall continue to pay its post-petition taxes owed to the Taxing Authorities in the ordinary course, without the requirement of any Taxing Authority to file any request for payment of such post-petition taxes.

    5.1.4     Default:          If the Reorganized Debtor fails to make a payment to a Taxing Authority pursuant to the terms of the Plan, it shall be deemed an Event of Default. In the event that an event of default occurs with regard to an Allowed Claim of a Taxing Authority, the specific Holder of such Allowed Claim shall send a written notification, via first class mail, postage pre-paid, to the Reorganized Debtor of the event of default. The Reorganized Debtor shall have ten (10) days from the date the written notification is sent to cure the event of default in full or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Reorganized Debtor's mailing address for purposes of sending this written notification is Blue Chip Hotel Assets

Group - Round Rock, LLC, 1990 IH 35 N, Round Rock, TX 78681. Notices sent to the Reorganized Debtor by the Holder of an Allowed Priority Tax Claim shall be sent by first class mail, postage pre-paid.

The Class 1 Secured Claims of the Taxing Authorities are Impaired under the Plan.

5.2    Secured Claims of Hotel Reposition Partners, LLC:  (Class 2) -- Class 2 shall consist of the Allowed Secured Claim of Hotel Reposition Partners, LLC ("HRP"). The Class 2 Claim of HRP shall be treated as a fully Secured Claim in the amount of $8,224,000. If a sale of the Property is consummated at the Reserve Price, proceeds from the Sale shall be used to satisfy the Class 2 Claim of HRP. If a Sale does not occur, the Claim treatment below is submitted.

5.2.1    The Class 2 Claim shall be treated as a Secured Allowed Claim in the amount of $8,224,000 (the "HRP Secured Claim") as of the Effective Date, including all pre- and post- petition interest, default interest, collection costs, or other costs, charges, expenses or other obligations to which HRP may be entitled to inclusion on its Claim pursuant to 11 U.S.C. § 506. The Reorganized Debtor shall assume and modify (i) that certain R Bank Note, R Bank Deed of Trust (the "HRP Deed of Trust"), and R Bank Security Agreement (collectively, the "R Bank Loan Documents") dated on or about October 17, 2018 and executed by the Debtor in favor of R Bank, and assigned to HRP on June 17, 2019 and the R Bank Loan Documents shall govern, save and except the following modifications:

1)    The maturity date of the R Bank Note shall be modified to February 1, 2028 (the "HRP Maturity Date");

2)    The interest rate on the R Bank Note shall remain, as provided in the R Bank Loan Documents, at six and one-quarter percent (6.25%) per annum through October 2010, and reducing to six percent thereafter;

3)    The principal amount owing under the R Bank Note shall be modified to the amount of the HRP Secured Claim and shall be paid in monthly installment payments based upon a twenty (20) year amortization. Beginning on March 1, 2020, the Reorganized Debtor shall make a principal and interest payment, and shall continue making a principal and interest payment on the first (1st) day of each subsequent month thereafter until the earlier of the HRP Maturity Date, or the balance of the R Bank Note, as modified by this Plan, is paid in full;

4)       The Reorganized Debtor shall have the right to prepay any or all of the balance of the R Bank Note prior to the HRP Maturity Date with no prepayment penalties or interest; and

5)       There may exist or may have existed Event(s) of Default (as defined in the R Bank Loan Documents). Any such Event(s) of Default shall be waived by HRP as of the Effective Date.

5.2.2   <u>Default</u>:     In the event of a default under the terms of this Plan, or the terms of the R Bank Loan Documents, as modified by this Plan and the Confirmation Order, HRP shall give notice to the Debtor and Debtor's Counsel via Certified United States Mail or Federal Express identifying the act(s) creating the default and under what term(s) of the Plan or R Bank Loan Documents the default is being declared under (the "Cure Notice"). The Debtor shall have fifteen (15) days from the receipt of the Cure Notice to cure the alleged defaults specified in the Cure Notice. In the event that the alleged defaults are in fact defaults, and not cured within fifteen days after receipt of the Cure Notice, then HRP may exercise any and all rights it may have under this Plan or the R Bank Loan Documents.

5.2.3   <u>Guaranties</u>:     The Plan does not affect the rights of HRP as against any party who may be a guarantor of the R Bank Note ("Guarantor Party"), nor does the Plan affect the rights of any Guarantor Party as against HRP. The Plan does not release any Guarantor Party from any obligation it may have with respect to the R Bank Note.

It is contemplated that HRP and the Reorganized Debtor shall execute any documents necessary to effectuate the foregoing within thirty (30) days after the Effective Date of the Plan. HRP shall provide drafts of any such documents to the Debtor as soon as practicable after the Confirmation Date. With regard to any attorney's fees relating to closing costs incurred by the Reorganized Debtor or HRP to any documents related to the foregoing treatment, each party shall be responsible for its own attorneys' fees and costs.

The Class 2 Claim(s) of HRP are Impaired under the Plan.
.

5.3   <u>Secured Claim of Tax Lender, MTAG Services, LLC</u>: (Class 3) -- Class 3 shall consist of the Allowed Secured Claim of the tax lender, MTAG Services, LLC ("MTAG") related to that certain tax claim assigned by Home Tax Solutions, LLC. If a sale of the Property is consummated at the Reserve Price, proceeds from the Sale shall be used to satisfy the Class 3 Claim of MTAG. If a Sale does not occur, the Claim treatment below is submitted. The Reorganized Debtor shall assume and modify the assigned loan documents and such loan documents shall govern, save and except the following modifications:

1)       MTAG waives any late charges, costs or penalties which may have arisen prior to or after the Petition Date;

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 12**

2)     Any pre-petition or post-petition defaults under the loan documents are hereby extinguished; and

3)     Payments due by the Debtor under the loan documents shall be recalculated to include any payment arrears due and owing by the Debtor under the loan documents as of the Effective Date.

MTAG shall execute any documents necessary to effectuate the foregoing within sixty (60) days after the Effective Date.

The Class 3 Claim is Impaired under the Plan.

5.4    Secured Claim of Ascentium Capital: (Class 4) -- Class 4 shall consist of the Allowed Secured Claim of Ascentium Capital ("AC") related to that certain Furniture Fixtures and Equipment Loan Agreement executed by the Debtor (the "AC Agreement"). If a sale of the Property is consummated at the Reserve Price, proceeds from the Sale shall be used to satisfy the Class 4 Claim of AC. If a Sale does not occur, the Claim treatment below is submitted. AC will retain its lien on its collateral. The Reorganized Debtor shall assume and modify the AC Agreement and the AC Agreement shall govern, save and except the following modifications:

1)     AC waives any late charges, costs or penalties which may have arisen prior to or after the Petition Date;

2)     Any pre-petition or post-petition defaults under the AC Agreements are hereby extinguished; and

3)     Payments due by the Debtor under the AC Agreements shall be recalculated to include any payment arrears due and owing by the Debtor under the AC Agreements as of the Effective Date.

4)     The Plan does not affect the rights of AC as against any party who may be a guarantor of the AC Agreement ("Guarantor Party"), nor does the Plan affect the rights of any Guarantor Party as against AC. The Plan does not release any Guarantor Party from any obligation it may have with respect to the AC Agreement.

AC shall execute any documents necessary to effectuate the foregoing within sixty (60) days after the Effective Date.

The Class 4 Claim is Impaired under the Plan.

5.5    General Unsecured Claims: (Class 5) -- Class 5 shall consist of all other Allowed Claims against the Debtor not placed in any other Class. Creditors holding Allowed Class 5 General Unsecured Claims shall be paid 100% of their Allowed Claims with payments being made on a quarterly basis on October 1, January 1, April 1 and July 1 of each year, over a period of five (5) years, unless paid sooner from the proceeds of a Sale of the Property.

The Class 5 General Unsecured Claims are Impaired under the Plan.

5.6    General Unsecured Claims of Insiders: (Class 6) -- Class 6 shall consist of all Allowed Claims against the Debtor by Insiders not placed in any other Class. Creditors holding

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 13**

Allowed Class 6 General Unsecured Claims shall be paid 100% of their Allowed Claims with payments being made annually with each receiving their pro rata share of the following payments, unless paid sooner from the proceeds of a Sale of the Property. :

| Year | Total Amount Paid |
|------|-------------------|
| 2020 | $10,000 |
| 2021 | $50,000 |
| 2022 | $100,000 |
| 2023 | $150,000 |
| 2024 | $200,000 |
| 2025 | $533,870.75 |

The Class 6 General Unsecured Claims are Impaired under the Plan.

5.7 <u>Equity Interest Holders</u>: (Class 7) -- Class 7 consists of the equity interests currently held by the members of the Debtor (the "Equity Interests"). The Equity Interest Holders will retain their interests upon the Effective Date in exchange for providing the $600,000 necessary to pay the estimated Administrative Expense Claims of this case.

The Class 7 Equity Interest Holders Claims are unimpaired under the Plan.

5.8 <u>Payments to the United States Trustee</u>: The Reorganized Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6). Any fees due as of the date of the Confirmation Hearing will be paid in full on the Effective Date of the Plan. After confirmation, the Reorganized Debtor shall pay United States quarterly fees as they accrue until this case is closed by the Bankruptcy Court. The Reorganized Debtor shall filed with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

6.1 <u>Sale of the Property</u>: The Plan contemplates the sale of the Property to a third party. Article VII of the Plan sets forth the Auction and Bid Procedures relating to the sale of the Property. If the Debtor receives a Qualified Bid in excess of the Reserve Price, an auction will be held pursuant to the procedures set forth in Article VII of the Plan. At the Confirmation Hearing, the Debtor will seek approval of the Bankruptcy Court to sell the Property free and clear of any Liens, Claims, encumbrances or other interests to the Prevailing Bidder. The Confirmation Order shall contain specific authority to consummate the sale of the Property and approve the sale pursuant to Section 363 of the Bankruptcy Code. The proceeds from the Auction shall first be used to fund any unpaid Administrative Claims, including the DIP Loan, Professional Claims, and/or Priority Claims in the ordinary priority scheme of the Bankruptcy Code. The remaining proceeds from the Auction shall be used to fund the plan payments herein.

If a sale of the Property is consummated at or above the Reserve Price, all Plan obligations may be fulfilled upon the Effective date and the Reorganized Debtor will be under no further obligations to support Plan obligations. If the Reserve Price is not met, the Reorganized Debtor will continue to operate and manage the Debtor's assets to satisfy its obligations under the Plan.

6.2     Auction and Bid Procedures:  In the event that the Debtor timely receives a Qualified Bid prior to the Bid Deadline, the Debtor proposes to conduct the Auction at the location, date and time specified below, which Auction shall be subject to the procedures, terms, and conditions specified in Article VII of this Plan (collectively the "Bid Procedures").

6.3     Post-Effective Date Management:  The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, in which it is incorporated, for the purposes of operating and managing the Debtor's assets and satisfying its obligations under the Plan. The Reorganized Debtor shall be owned by the Equity Interest Holders. The Reorganized Debtor shall be managed by the management company MKM Lodging Services.

6.4     Corporate Action:  The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation. The management of the Reorganized Debtor is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor and Reorganized Debtor.

6.5     Documents:  All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on or before the Effective Date, unless another date is provided for a particular document or documents under this Plan. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter, the Court shall have resolved said issues and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

6.6     Re-Vesting of Assets:  On the Effective Date, except as otherwise provided in this Plan, title to all of the Debtor's assets shall vest in the Reorganized Debtor free and clear of all liens, claims, Causes of Action, interests, security interests and other encumbrances other than those provided herein or granted by Debtor on or after the Effective Date and without further order of the Bankruptcy Court. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of its assets free of any restriction of the Bankruptcy Code unless otherwise provided in this Plan or under applicable state law.

6.7     Substantial Consummation:   Substantial consummation of the Plan under Section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

6.8     Assumption of Franchise Agreement with IHG

    6.8.1   Assumption.   On the Effective Date, the Franchise Agreement shall be assumed by the Debtor/Reorganized Debtor.   The Confirmation Order shall constitute an order approving the assumption under the Plan.

6.9     Incorporation of Bankruptcy Rule 9019.     To the extent necessary to effectuate and implement the compromises and releases contained in the Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

6.10    Incorporation of Valuation Motion.   To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including to value any lien, security interest, or encumbrance treated by this Plan; *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Chapter 11 Case.

6.11    Automatic Stay The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

6.12    Rights Under 1129(b).:   If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtor will seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1129(b) in that event.

## ARTICLE VII
## AUCTION AND BID PROCEDURES

7.1     Property to be Sold:   The Debtor shall offer for sale the Property, which is located at 2340 IH 35 North, Round Rock, Texas 78681 and along with the FF&E, constitutes substantially all of the Debtor's assets.

7.2     Participation Requirements:   Any person wishing to participate in the bidding process (each a "Potential Bidder") must become a "Qualifying Bidder" (as defined below).   As a prerequisite to becoming a Qualified Bidder, a Potential Bidder: (a) must deliver an executed confidentiality agreement in form and substance acceptable to the Debtor; and (b) must be able, as determined by the Debtor in its sole business judgment, to consummate the transaction based upon the Qualifying Bid.   A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a "Qualifying Bidder."   The Debtor reserves the right to at any time (i) require any Potential Bidder previously determined to be a Qualified Bidder to provide additional evidence of its ability to consummate a transaction based upon a Qualifying Bid in order to remain a

Qualifying Bidder, and (ii) exclude any such Potential Bidder from participating further in the auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder.

7.3    Due Diligence:        The Debtor shall afford to any Qualifying Bidder the time and opportunity to conduct reasonable due diligence.  The due diligence period shall extend through and include the date of the Auction.  However, the Debtor will not be obligated to furnish any due diligence information after the Auction.

7.4    Bid Requirements:    To be deemed a "Qualifying Bid," a bid must meet or exceed of the Reserve Price of $10,500,000 (the "Reserve Price"), as well as be received from the Qualifying Bidder on or before the Bid Deadline and contain:

(1)    a statement that such Qualifying Bidder offers to purchase the Property upon the terms and conditions set forth by the Debtor;

(2)    a statement that such Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Property on terms and conditions set forth by the Debtor in its sole discretion and reasonable business judgment;

(3)    a clean and duly executed purchase and sale agreement or similar agreement;

(4)    a statement that such Bidder is financially capable of consummating the transactions contemplated by the sale agreement and written evidence in support thereof;

(5)    a statement that such Qualifying Bidder's offer is irrevocable until the closing of the Sale if such Qualifying Bidder is the Prevailing Bidder (as defined below) and whether such Qualifying Bidder agrees to serve as a Back-up Bidder;

(6)    such financial information to allow the Debtor to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the sale agreement;

(7)    a statement that the Qualifying Bidder is not requesting, nor is it entitled to any break-up fee, expense reimbursement, or similar type of payment;

(8)    a statement fully disclosing the identity of each entity that will be bidding at the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

(9)    evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the

submission, execution, delivery and performance of the sale agreement; and

(11) a purchase deposit equal to an amount at least 10% of the amount stated in its Qualified Bid.

7.5 <u>Bid Deadline</u>: A Qualifying Bidder that desires to make a bid shall deliver a written copy of its bid to counsel to the Debtor, Crowe & Dunlevy, P.C., 2525 McKinnon St., Suite 425, Dallas, Texas 75201 such that the bid is received by 5:00 p.m. (CST) on or before fifteen (15) days prior to the Confirmation Hearing.

7.6 <u>Evaluation of Qualifying Bids</u>: Prior to the Auction, the Debtor shall determine, in its sole business judgment, which of the Qualifying Bids is likely to result in the highest and best value to the Debtor.

7.7 <u>Auction</u>: In the event that the Debtor timely receives one or more Qualifying Bids the Debtor shall, on a date to be determined by the Debtor, conduct the Auction.

7.8 <u>Auction Procedures</u>: The Auction shall be governed by the following procedures:

(1) Only Qualifying Bidders who have made a Qualifying Bid shall be entitled to make any subsequent bids at the Auction;

(2) Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative with a valid and enforceable power of attorney or other written proof evidencing their ability to bind such parties, which document shall be delivered to the Debtor at or prior to the Auction;

(3) Bidding shall commence at the amount and terms of the highest and best Qualifying Bid equal to or in excess of the Reserve Price;

(4) Qualifying Bidders may submit successive bids in increments of at least $50,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $50,000.00 higher than the previous bid, provided however that the Debtor shall retain the right to modify the bid increment requirements at the Auction;

(5) The Auction will be conducted openly, and the Qualified Bidders will be informed of the terms of the highest and best previous bid;

(6) The Qualified Bidders shall have the right to submit additional bids and make modifications to the sale agreement at the Auction, provided that any such modifications on an aggregate basis and viewed in whole, shall not be less favorable to the Estate, as determined by the Debtor, than the terms of the highest and best Qualifying Bid at that time;

(7)     The Auction shall continue until there is only one offer that the Debtor determines, in its sole business judgment and subject to approval from the Bankruptcy Court, is the highest and best bid from among the Qualified Bids submitted at the Auction (the "Prevailing Bid").  The bidder submitting the Prevailing Bid shall become the "Prevailing Bidder" and shall be bound by the sale agreement and shall be, subject to Bankruptcy Court Approval and confirmation of this Plan, the owner of the Property.

## ARTICLE VIII
## PROVISIONS FOR THE ASSUMPTION AND REJECTION OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     <u>General Assumption of Executory Contracts</u>:  All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly rejected on or before ninety (90) days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date.  The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtor, or the Debtor-in-Possession has any liability thereunder.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving assumption under Section 365 of the Bankruptcy Code as of the Effective Date.  The Reorganized Debtor shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following Confirmation of this Plan.

8.2     <u>Cure of Defaults</u>:  Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within sixty (60) days after the Confirmation Date.  Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within forty-five (45) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with

respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtor on the later of: (i) ten (10) Business Days after the expiration of the forty-five day (45) period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order. Notwithstanding anything to the contrary, Accor shall not be required to file an Assumption Cure Proof of Claim, and the Debtor is obligated to pay the Cure Claim pursuant to the terms of the Plan.

8.3     <u>Claims for Damages</u>:  Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as a Class 7 Claim.  Any Claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

8.4     <u>Reservation of Rights</u>:  The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

## ARTICLE IX
## RESOLUTION OF UNDETERMINED CLAIMS

9.1     <u>Standing</u>.       In addition to all other parties that may otherwise have standing to object to claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

9.2     <u>Effect of Bar Date</u>:    In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not file a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

9.3     <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>.        Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Confirmation Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.  Notwithstanding the foregoing, and for the avoidance of doubt, the holder of a Secured Tax Claim may amend any timely filed proof of claim, where such proof of claim includes an estimated amount for *ad valorem* taxes, in order to assert actual taxes for said year(s), at any time prior to substantial consummation of the Plan.

9.4     Objection Deadline:  Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date.  Nothing in this Plan extends the Bar Date set in the Chapter 11 Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle or withdraw objections to contested Claims.

9.5     Creditor Response to Objection.      With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

9.6     No Payment Pending Allowance.      Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes and Allowed Claim.

9.7     Allowance of Claims:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Reorganized Debtor makes any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the Order allowing such Claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

9.8     Estimation of Claims: The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the

Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated subsequently and compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE X
## DISTRIBUTION PROCEDURES

10.1    Date of Distributions. Distributions shall be made as specified in Articles IV and V with respect to each Allowed Claim or Allowed Equity Interest. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be complete on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

10.2    Withholding and Reporting Requirements.    In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding any other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

10.3    Unclaimed Distributions.    In the event that any distribution to a Holder is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest from the original distribution date through the new distribution date; provided that such distributions shall be deemed unclaimed property under Section 347 of the Bankruptcy Code at the expiration of one year from the delivery thereof. After such date, all unclaimed property shall revert to the Reorganized Debtor, and the Claim of any other Equity to such property or interest in property shall be discharged and forever barred.

## ARTICLE XI
## MODIFICATION OF THE PLAN

11.1    Amendments Prior to Confirmation Date:  The Debtor may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Reorganization.

11.2    Amendments After Confirmation Date:  The Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

11.3    Effect on Claims:  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1    Purposes:  Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

    i.    to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or interest;

    ii.    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

    iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.    to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint or otherwise;

    v.    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

    vi.    to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

**FIRST AMENDED PLAN OF REORGANIZATION OF BLUE CHIP HOTEL ASSETS GROUP - ROUND ROCK, LLC – PAGE 23**

    vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

    viii.    to allow, disallow, determine, liquidate or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

    ix.    to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Debtor from creditor actions;

    x.    to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

    xi.    to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

    xii.    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

    xiii.    to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

    xiv.    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

    xv.    to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

    xvi.    to enter a Final Order and final decree closing the Chapter 11 Case.

    12.2  <u>Exclusive Jurisdiction</u>: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

    12.3  <u>Abstention</u>: If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article XI, this Article XI shall have no effect upon and shall not control, prohibit or

limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII
## CAUSES OF ACTION

13.1    <u>Retention of Causes of Action</u>:  All Claims and Causes of Action owned by the Debtor, Causes of Action that could have been brought by a Creditor on behalf of the Debtor, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Reorganized Debtor for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Debtor/Reorganized Debtor expressly reserves any and all causes of action it may have against R Bank and Hotel Reposition Partners, LLC, including but not limited to lender liability, fraud, fraudulent inducement, tortious interference, breach of contract, and breach of covenant of good faith and fair dealing. The Reorganized Debtor shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval. Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

## ARTICLE XIV
## GENERAL PROVISIONS

14.1    <u>Certain Rights Unaffected</u>:  Except as otherwise provided herein, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

14.2    <u>Headings</u>:  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

14.3    <u>Severability</u>:  If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

14.4    <u>Governing Law</u>:  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

14.5    <u>Successors and Assigns</u>:  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

14.6    <u>Discharge of Claims</u>:  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder

shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtor shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

14.7   Discharge of Debtor:  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

14.8   Exculpations:  The Debtor's professionals shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

14.9   Injunctive Relief:  Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

Dated: December 6, 2019

**Blue Chip Hotel Assets Group - Round Rock, LLC**

By: /s/ *Manoj Patel*
        Manoj Patel, CRO

_/s/ Vickie L. Driver_
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Christopher M. Staine
State Bar No. 24104576
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile: 214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: christopher.staine@crowedunlevy.com

**COUNSEL FOR DEBTOR**
**AND DEBTOR IN POSSESSION**